[Civ. No. 10616. First Appellate District, Division One.—December 22, 1938.]

HAROLD A. BROOKS, Appellant, v. PENSION BOARD OF THE CITY OF ALAMEDA et al., Respondents.

Decoto & St. Sure and J. Paul St. Sure for Appellant.

H. Albert George, City Attorney, and Breed, Burpee & Robinson for Respondents.

WARD, J., *pro tem.*—The question presented by this appeal from a judgment denying a petition for a peremptory writ of mandate is whether appellant, a retired police officer of the city of Alameda, is entitled to a pension of one-half or two-thirds of his salary.

On April 26, 1932, appellant on active duty sustained injuries which resulted in functional disability consisting of limitation of motion in the use of his left arm. On October 5, 1932, he applied for a pension under section 3 of the then effective Ordinance No. 276, New Series, which provided for the retirement of members of the police and fire departments at a monthly amount equal to two-thirds the salary paid to members of the same rank at the time of such retirement. This application was denied without prejudice to renewal. In March, 1933, the ordinance was amended in part as follows (No. 503, N. S.) : " . . . The person thus retired shall thereafter be paid from said fund during his lifetime, a monthly pension equal to one-half the salary paid to members of the rank which he held at the time of receiving such retirement . . . " On July 26, 1935, appellant renewed his application and was granted and paid a pension of two-thirds the salary attached to his rank. On December 16, 1936, the pension board determined to review its order of July 31, 1935, and on February 3, 1937, declared by resolution that appellant " . . . has been paid the sum of $465.88 in error, and is indebted to the Pension Fund of the City of Alameda in that amount". Appellant did not refund the amount and respondents directed, by order, a credit on the books of the pension board from subsequent monthly pension payments of the indebtedness found to exist.

An ill or injured officer or employee is not entitled as a matter of right to a pension from the government unless

the government contracts expressly or impliedly to bring about the efficacious results which a pension produces. (*Douglas* v. *Pension Board of the City of Sacramento,* 75 Cal. App. 335 [242 Pac. 756].) Only upon the occurrence of the contingencies prescribed in a pension statute does the right to a pension become vested. (*Klench* v. *Board of Pension Fund Commrs.,* 79 Cal. App. 171, 182 [249 Pac. 46].)

▉ The conditions set forth in the ordinance and amendment thereto under consideration are (a) service in a fire or police department; (b) bodily injury or illness peculiar to the rank in the particular department; (c) physical disability as a direct result of the injury or illness; (d) the order for the retirement upon a request on behalf of the person, or without such request if deemed "for the good of the service". This is not a case in which the government actually or inferentially agreed that if the officer served a definite period of time he would be entitled to a pension, nor is it a case in which the officer died as the result of injuries received in the line of official work, but this case is based upon such facts and such provisions of the ordinance as require appellant, though retired from actual work, to remain a member of the department, subject to recall and restoration to active duty. The restoration depends upon the condition and continuance of disability. The disability may be in whole or in part; the illness, disease or injury may be of slight or grave importance in determining the ability of the officer to continue on duty with work that may be performed by one of his rank. An injury disabling a fireman from duty might not be sufficient to disable a policeman, or *vice versa.* The size of the department and the work that may be assigned to one of the same rank are matters to be taken into consideration. A traffic officer standing for hours at a busy intersection of streets might be disabled from performing such work, and still completely and effectively patrol a beat on foot, drive a vehicle or do other work performed by the officers or employees of the same rank. If the officer or employee is disabled to the extent that he is unfit to perform the duty of the rank to which he may be assigned, then he should be retired. The determination of this question is left under this ordinance to the discretion of the pension board and should not be disturbed unless the exercise of such discretion is abused.

 Upon the hearing of the petition for a writ of mandate in the present case the court found that at no time prior to the March, 1933, amendment did petitioner become physically disabled from the performance of his duties, etc. This finding is supported by testimony that appellent, after the accident, was actually doing police work in the department as a traffic officer, an investigator of violations of the law, and certain clerical work. There is no evidence in the record to show that this class of work was not performed by officers of equal rank. In *People ex rel. Metcalf* v. *McAdoo,* 184 N. Y. 268, 272 [77 N. E. 17, 18], the court said: "Fitness for police duty means the ability to discharge with average efficiency the duty of the grade to which the member belongs."

Appellant relies upon the case of *Simmons* v. *Policemen's Pension Com.* (Deal), 111 N. J. L. 134 [166 Atl. 925], wherein the court said: "If a policeman is unable to perform the ordinary every day duties of a policeman, and is permanently unfitted therefor, he is under permanent disability, and it is no answer to say that the statute does not entitle him to retire, because he is able to sit at a desk and make entries in a book. . . . We think the theory of our statute is that a fireman is a fireman, a policeman a policeman, and neither a desk clerk." We cannot adopt the holding in the Simmons case. If clerking at a desk is a class of work to which some members of the same rank are assigned, and the member of the department has the ability to discharge with average efficiency the duties thereof, then the officer or employee is fit for duty within the grade to which the member belongs.

As was said in *People ex rel. Metcalf* v. *McAdoo, supra:* "A large police force must have some members of unusual ability who are peculiarly fit to discharge the duties of their positions. It must have some of a low degree of efficiency who are barely able to fill the requirements of the office. The statute refers to neither of these classes, but to the great mass of the force, representing its average efficiency."

*Clark* v. *Board of Police Pension Fund Commrs.,* 189 Wash. 555 [66 Pac. (2d) 307], is a case in which a pensioned police officer was directed to return to duty. Similar questions were involved as in the present case. The court affirmed the judgment. In the decision the court commented upon *Simmons* v. *Policemen's Pension Fund Com.* (Deal.), *supra,* and *People ex rel. Metcalf* v. *McAdoo, supra,* and adopted the rule

that if the member of the department is reasonably able to perform the ordinary duties of a police officer he should be restored to service.

■ Appellant was not eligible for a pension before the date of the amendment to the ordinance. He had failed to prove one condition, namely, that he was disabled. Subsequently he petitioned for retirement, alleging disability. The pension board granted this petition. Appellant does not question the sufficiency of the evidence regarding disability upon the date that the retirement order became effective, but contends that appellant's rights cannot be affected by legislation enacted subsequent to the time of injury but prior to the time of retirement.

In *Dryden* v. *Board of Pension Commrs.*, 6 Cal. (2d) 575, 579 [59 Pac. (2d) 104], the court said: "It has been clearly held that the pension provisions of the city charter are an integral portion of the contemplated compensation set forth in the contract of employment between the city and a member of the police department, and are an indispensable part of that contract, and that the right to a pension becomes a vested one upon acceptance of employment by an applicant."

■ In passing it may be well to note that it is not the illness or injury, but the result therefrom, namely, the inability to perform the work, that is the controlling factor in forcing the government to recognize the express or implied contract with its employee. If the employee holds a vested right, it is only the right to a pension, reasonable in amount, in accordance with the circumstances and the time that the pension becomes operative by the retirement of the employee.

In *Murphy* v. *City of Piedmont*, 17 Cal. App. (2d) 569, 574 [62 Pac. (2d) 614, 64 Pac. (2d) 399], the court said: "But, assuming that some rights are vested it is settled law that a pensioner has no right to a specific sum as a pension, but that sum may be increased or decreased as the circumstances demand. (*Casserly* v. *Oakland*, 6 Cal. (2d) 64 [56 Pac. (2d) 237].)" (See, also, *Klench* v. *Board of Pension Fund Commrs.*, *supra*; *Aitken* v. *Roche*, 48 Cal. App. 753 [192 Pac. 464]; *Rumetsch* v. *Davie*, 47 Cal. App. 512 [190 Pac. 1075].)

■ The right to a pension is a vested right; the amount of the pension may not always be ascertained until the last contingency has occurred. In this case the amount was fixed

by ordinance as an amount "equal to one-half the salary paid to members of the rank which he held at the time of receiving such retirement". Respondents, through a mistake of fact and a mistake of law, made payments in excess of the amount due appellant. Directing by proper resolution a credit on the books, was a correct method of recovery. (*Foster* v. *Pension Board of the City of Alameda,* 23 Cal. App. (2d) 550, 555 [73 Pac. (2d) 631].)

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 21, 1939, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 20, 1939.